UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:22-cv-00745 |
| v. | : | |
| REAL PROPERTY KNOWN AND NUMBERED AS 14 GARDEN PLACE, CINCINNATI, HAMILTON COUNTY, OHIO, WITH ALL APPURTENANCES, IMPROVEMENTS, AND ATTACHMENTS THEREON, | : : : : | |
| Defendant. | | |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendant in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture to the United States of the following:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property;

and/or 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture to the United States of:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

2. The term "specified unlawful activity" means, in relevant part, any act which is indictable under 18 U.S.C. § 1343 (relating to wire fraud), as set forth in 18 U.S.C. § 1961(1)(B) and incorporated by 18 U.S.C. § 1956(c)(7)(A).

## THE DEFENDANT IN REM

3. The defendant is real property known and numbered as 14 Garden Place, Cincinnati, Hamilton County, Ohio 45208 with all appurtenances, improvements, and attachments thereon, which is more fully described in Attachment A. The record owner of the defendant is Benjamin Cantey.

4. The defendant has not been seized, but it is located within the Southern District of Ohio and within the jurisdiction of the Court. The United States does not request authority from the Court to seize the defendant at this time. The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

   a. post notice of this action and a copy of the Complaint on the defendant;

   b. serve notice of this action on the property owner and any other person or entity who may claim an interest in the defendant, along with a copy of this Complaint;

   c. execute a writ of entry for the purpose of conducting an inspection and inventory of the defendant; and

   d. file a lis pendens against the defendant.

5. Title 18, United States Code, Section 985(c)(3) provides that, because the United States will post notice of this Complaint on the defendant, it is not necessary for the Court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the property. Title 18, United States Code, Section 985(b)(2) states that "the filing of a lis pendens

and the execution of a writ of entry for the purpose of conducting an inspection and inventory of the property shall not be considered a seizure under this subsection."

## JURISDICTION AND VENUE

6. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant under 18 U.S.C. § 981(a)(1)(A) and (C). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

7. This Court has *in rem* jurisdiction over the defendant under 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

8. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395(b) because the defendant is located in the Southern District of Ohio.

## BASIS FOR FORFEITURE

9. The defendant is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because the property was involved in a transaction in violation of 18 U.S.C. §§ 1956 and/or 1957 or is property traceable to such property; and/or is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) because the property constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity," namely, wire fraud in violation of 18 U.S.C. § 1343, or a conspiracy to commit such offense.

3

## FACTS

10. In or about November 2022, to the present, the Federal Bureau of Investigation ("FBI") has been investigating a wire fraud scheme in the Southern District of Ohio. During the course of the investigation, the FBI learned of evidence to believe that Benjamin Cantey ("Cantey"), as founder and CEO of Carbon IQ Inc d/b/a Rumby ("Rumby"), a Delaware corporation, engaged in a wire fraud scheme based in Cincinnati, Ohio.

11. Rumby is a venture-backed startup headquartered in downtown Cincinnati, Ohio, which provides an e-commerce platform for pickup and delivery of laundry and dry cleaning.

12. The purpose of Cantey's fraud scheme was to obtain money from investors by false and fraudulent representations, which he used to enrich himself. For example, Cantey used funds from investors to purchase his personal residence (the defendant).

13. On November 1, 2022, the FBI interviewed Cantey, who was accompanied by counsel. During this interview, Cantey claimed that his false reports to current and potential investors began in October 2020.

14. According to Cantey, he primarily communicated with investors through text messages and phone calls and provided Rumby updates to current and potential investors by email. Cantey admitted that most of the financial numbers that he communicated were materially false and that he continued to generate false numbers until June 2022.

15. Knowing that revenue numbers were most important to investors, Cantey used materially false pitch decks, which are short presentations, and emails to communicate false revenue growth numbers to current and potential investors. Cantey presented the pitch decks through an online platform, such as Zoom.

16. To generate the revenue numbers, Cantey typically would use data from high-

performing customers to falsify reports for current and potential investors by making it appear as if all customers were performing at the level of the high-performing customers.

17. Rumby received proceeds in a Bank of America checking account, ending in account number 9370, in the name of Carbon IQ Inc ("BoA 9370"). Shortly after a former business partner departed Rumby in October 2020, Cantey had sole control over BoA 9370.

18. On March 1, 2022, BoA 9370 had an account balance of negative $26,191.18. Cantey's materially false pitches and fabricated revenue numbers induced investors to wire funds into BoA 9370 as follows:

| Date | Investor | Amount |
|---|---|---|
| 03/22/2022 | Maxwell Capital Group LLC | $1,000,000.00 |
| 03/23/2022 | C2 V Capital Partners II, LP | $349,999.59 |
| 03/28/2022 | Gould Ventures LLC | $100,000.00 |
| 03/29/2022 | Kappock River VI LLC | $50,000.00 |
| | | |
| | Ending balance March 31, 2022 | $1,282,027.76 |

19. On May 1, 2022, BoA 9370 had a beginning account balance of $1,036,660.97. Through materially false representations, Cantey obtained an additional wire transfer from Maxwell Capital Group LLC into BoA 9370 in the amount of $850,000.00.

20. LC-CV RBY, LLC, which is affiliated with Maxwell Capital Group LLC, authorized Carbon IQ Inc. to use proceeds from the $850,000.00 bridge loan to purchase booth footage at the Clean Show (large industry show in Atlanta, Georgia) in July 2022, marketing consulting, marketing materials, and event planning consulting and to purchase a partnership with the Cincinnati Bengals to promote the business and grow Carbon IQ's reputation and credibility.

21. Without the knowledge or consent of Maxwell Capital Group LLC, Cantey used the $850,000.00 loan to purchase the defendant. In the fall of 2022, Cantey repaid the $850,000.00 loan with funds from one or more investors.

22. To purchase the defendant, on May 6, 2022, Cantey wired $1,000,000.00, which represented the proceeds of specified unlawful activity, from BoA 9370 to an IOTA Trust account at First American Trust.

23. On May 9, 2022, Cantey wired an additional $695,531.42 for the purchase of the defendant, which represented the proceeds of specified unlawful activity, from BoA 9370 to an IOTA Trust account at First American Trust. The ending account balance for BoA 9370 on May 31, 2022, was negative $53,317.08.

24. The Hamilton County Auditor's website shows that Cantey purchased the defendant from "VALZ DAVID R TR" on May 20, 2022, for $1,730,000.

25. Cantey designed the financial transactions for the purchase of the defendant in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

26. In addition, by purchasing the defendant, Cantey knowingly engaged in monetary transactions in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity, in violation of 18 U.S.C. § 1957(a).

27. Based on the foregoing facts, the United States asserts that the defendant is subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(A) because the property was involved in a transaction in violation of 18 U.S.C. §§ 1956 and/or 1957 or is property traceable to such property; and/or is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) because the property constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity," namely, wire fraud in violation of 18 U.S.C. § 1343, or a conspiracy to commit such offense.

**CLAIM FOR RELIEF**

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to 18 U.S.C. § 985(b)(2) and 18 U.S.C. § 983(j), which permit the Court to "take any . . . action to . . . preserve the availability of the property subject to civil forfeiture," the Court issue the proposed Writ of Entry authorizing the United States Marshals Service or its delegate to enter the defendant on one or more occasions during the pendency of this *in rem* forfeiture action:

    1. for the purpose of conducting an inspection and inventory of the defendant, which inspection and inventory may include still and video photography;

    2. to be accompanied on any such occasion by any government or contract personnel selected by it for the purpose of conducting an inventory of the defendant; and

    3. to be accompanied on any such occasion by any federal, state, and local law enforcement officers selected by it to ensure the safety of any person acting under the Writ of Entry;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendant to assert in conformity with the law a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendant to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendant as provided by law; and

(e)  the Court award the United States all other relief to which it is entitled, including the costs of this action.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


s/Deborah D. Grimes
DEBORAH D. GRIMES (0078698)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Deborah.Grimes@usdoj.gov

**VERIFICATION**

I, Colin Malone, hereby verify and declare under the penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint for Forfeiture In Rem and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except that those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

Dated Dec 12, 2022

Colin Malone, Special Agent
Federal Bureau of Investigation